UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FLOYD G. RIFENBURG, | ) | Case No. 1:07CV1695 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM ORDER** |
| SOCIAL SECURITY, | ) | **AND OPINION** |
| | ) | |
| Defendant. | ) | |

    Floyd G. Rifenburg ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") failed to : (1) fully and fairly evaluate the medical evidence; (2) apply the treating physician rule to the retrospective opinions of treating physicians; and (3) call a medical expert to testify regarding the retrospective opinions of treating physicians. ECF Dkt. #18. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the matter for further factfinding, analysis, and articulation.

## I.    PROCEDURAL AND FACTUAL HISTORY

    On April 24, 2003, Plaintiff filed an application for DIB alleging disability resulting from post-traumatic stress disorder ("PTSD"), a "bad heart," and "bad lungs." Tr. at 60-75. Plaintiff's application was denied initially and on reconsideration. *Id*. at 23-26, 29-31. On April 23, 2004, Plaintiff filed a request for an administrative hearing. *Id*. at 32. On February 21, 2006, an ALJ conducted a hearing where Plaintiff appeared with counsel. *Id*. at 652-696. The ALJ received testimony from Plaintiff and a vocational expert. *Id*. On September 20, 2006, the ALJ issued a decision denying Plaintiff's claim. *Id*. at 13-18. On April 13, 2007, the Appeals Council denied Plaintiff's request for review. *Id*. at 6-8. On June 7, 2007, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.

## II. SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION

The ALJ determined that Plaintiff did not suffer a severe impairment within the meaning of 20 C.F.R. 404.1520(c) on or before September 30, 1997, the date Plaintiff was last insured. Tr. at 14-18.

The ALJ first reviewed Plaintiff's alleged physical impairments. Tr. at 14. The ALJ noted that Plaintiff suffered from pressure calluses and a severe hyperextension deformity of all of the toes on the left foot. *Id*. The ALJ further noted that Plaintiff was treated on August 26, 1996 for bronchitis and chronic obstructive pulmonary disease ("COPD"). *Id*. Doctors prescribed Motrin and Darvocet for chest pain and instructed Plaintiff to stop smoking. *Id*. The ALJ last noted that on August 11, 2003, Franklin D. Krause, M.D. performed a consultative examination at the request of the Board of Disability Determination. *Id*. Dr. Krause concluded that Plaintiff's hypertension was well controlled and his pulmonary function was within normal limits. *Id*. Based on these observations and without further analysis, the ALJ concluded that Plaintiff had failed to carry his burden of showing that he suffered a severe impairment prior to September 30, 1997.

The ALJ then reviewed Plaintiff's mental impairments. Tr. at 15-17. The ALJ noted that Plaintiff received most of his treatment for his mental impairments through the Veterans Administration ("VA"). *Id*. at 15. Plaintiff's records from 1997 indicated a history of alcohol abuse and difficulty sleeping due to nightmares. *Id*. On June 2, 1998, physicians diagnosed severe alcohol dependence with physiological dependence and recommended substance abuse rehabilitation. *Id*. Although Plaintiff applied for admission to a program, he was denied because he had no specific traumatic memories. *Id*. On June 19, 1998, Plaintiff was discharged from the VA's care. *Id*. On February 17, 1999, he reported one year of sobriety. *Id*.

On January 29, 1999, Martha W. Clower, Ph.D. examined Plaintiff following his request for service-connected benefits for PTSD. Tr. at 15. Dr. Clower noted that Plaintiff had been injured by an explosion in Vietnam, but he had no waking memory of the event. *Id*. He exhibited symptoms including recurrent distressing dreams of explosions, believing that the traumatic event was recurring, avoiding and numbing of general responsiveness, hypervigilance, and difficulty

concentrating. *Id*. Dr. Clower administered a Mississippi Scale[1] and measured a score of 132, which she considered to be consistent with PTSD. *Id*. Dr. Clower also administered a Minnesota Multiphasic Personality Inventory-II test.[2] *Id*. Plaintiff's MMPI-II score was not typical of the scores shown by veterans with PTSD, although the PTSD subscale was typical. *Id*. Based upon Plaintiff's history, clinical interview, and test results, Dr. Clower concluded that Plaintiff suffered from PTSD. *Id*.

On January 14, 2003, Plaintiff returned to the VA clinic and reported that he had memories of prisoners being tortured during the war, but he had never been tortured. Tr. at 15. He also reported nightmares that were unrelated to the war, such as machinery falling on him or being chased by a tornado. *Id*.

The ALJ then recited the standard set forth in 20 C.F.R. 404.1527 for reviewing medical opinions. Tr. at 16. The ALJ went on to consider Alan S. Catro, M.D.'s opinion that Plaintiff was disabled. *Id*. On June 17, 2003, Dr. Castro wrote a report stating that Plaintiff had been a patient since February 7, 2001. *Id*. Dr. Castro documented Plaintiff's irritable mood, intrusive thoughts, nightmares, and flashbacks. *Id*. He also noted that Plaintiff was easily distracted and easily startled.

---

[1] "The M-PTSD is a 35-item self-report measure that assesses combat-related PTSD in veteran populations. Items sample DSM III symptoms of PTSD and frequently observed associated features (substance abuse, suicidality, and depression). Respondents are asked to rate how they feel about each item using 5-point, Likert-style response categories. Ten positively framed items are reversed scored and then responses are summed to provide an index of PTSD symptom severity which can range from 35-175. Cutoff scores for a probable PTSD diagnosis have been validated for some populations, but may not generalize to other populations." United States Department of Veterans Affairs, National Center for PTSD, *Mississippi Scale for Combat-Related PTSD (M-PTSD)* (1998), *available at* http://www.ncptsd.va.gov/ncmain/ncdocs/assmnts/mississippi_scale_for_combatrelated_ptsd_mptsd.html (last visited June 4, 2008).

[2] The MMPI-II is the revised and updated version of the MMPI, which is a test designed to identify personality traits and assist in diagnosing mental illness or psychosis. *U.S. v. Battle*, 235 F.Supp.2d 1301, 1307 (N.D.Ga.,2001).

*Id.* Dr. Castro noted that the symptoms had persisted since Plaintiff returned from Vietnam in 1966, but they were most severe between 2000 and 2003. *Id.* Dr. Castro diagnosed PTSD and alcohol dependence. *Id.* On November 30, 2005, Dr. Castro stated that the Plaintiff had marked limitations in the abilities to respond appropriately to supervision, to respond appropriately to co-workers, to respond to sustained work pressures, and to respond appropriately to changes in the work setting. *Id.*

On March 22, 1999, the VA found that claimant's service-connected condition had been 30 percent disabling since June 16, 1998. Tr. at 16.

The ALJ then noted that state agency psychologists who reviewed Plaintiff's case determined that there was insufficient medical evidence of Plaintiff's impairments prior to September 30, 1997. Tr. at 17. The ALJ pointed to the fact that, prior to September 30, 1997, Plaintiff had been treated for alcohol dependence, not PTSD. *Id.* Further, he was not eligible for the VA's Transcend program because he had no memory of a traumatic experience. *Id.*

The ALJ afforded Dr. Clower's opinion little weight because she conducted her clinical interview and psychological testing more than a year after Plaintiff was last insured for benefits. Tr. at 17. The ALJ also gave Dr. Castro's opinion little weight because he did not first examine Plaintiff until 2001, more than three years after the date Plaintiff was last insured. *Id.* The ALJ afforded greater weight to the assessments of state agency psychologists, but offered no additional explanation. *Id.*

Based upon this analysis, the ALJ determined that Plaintiff had failed to established that he had a severe impairment lasting for a continuous period of 12 months prior to the date he was last insured. Tr. at 17. The ALJ went on to explain that, even if Plaintiff's mental impairment had been severe at any time prior to the date he was last insured, his alcohol dependence would have been a material factor contributing to disability. *Id.* Further, Plaintiff continued to abuse alcohol beyond the date on which he was last insured. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable

mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. LAW AND ANALYSIS

### A. Whether the ALJ fully and fairly evaluated the medical evidence of record

#### i. Physical Impairments

Plaintiff first contends that the ALJ erred in dismissing his claim at Step Two because he had breathing problems prior to his date last insured, and he had been diagnosed with COPD. ECF Dkt. #18 at 12 citing Tr. at 138-39. Plaintiff was also diagnosed with respiratory dysfunction on June 26, 1997. ECF Dkt. #18 at 12 citing Tr. at 343. Plaintiff further notes that Plaintiffs symptoms of COPD were well-documented prior to his date last insured. ECF Dkt. #18 at 12 citing Tr. at 162, 200-02, 246, 300, 316, 318, 343, 452, 630, 638-40, 642, 616-19. Plaintiff contends the ALJ erred in relying solely on Dr. Krause's consultive examination for two reasons. First, the ALJ failed to account for other evidence of record. ECF Dkt. #18 at 12-13. Second, the ALJ only looked to Dr. Krause's statement that Plaintiff's pulmonary function was within normal limits; the ALJ ignored Dr. Krause's diagnosis of velcro-type rales with early clubbing, ruling out interstitial fibrosis. *Id.* at 13.

Defendant concedes that Plaintiff had been diagnosed with COPD prior to his date last insured, but Defendant contends that the medical evidence shows that the condition was not severe. ECF Dkt. #20 at 10. Defendant then points to several medical records in support of its claim. *Id.* Plaintiff, however, argues that the ALJ did not rely on the medical evidence to which Defendant refers. ECF Dkt. #22 at 2.

At Step Two in the sequential analysis for evaluating disability, the ALJ determines whether a claimant's impairments are severe and whether they meet the durational requirement. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). At this Step, the claimant bears the burden of proving the threshold requirement of a "severe impairment. " *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The Court must apply a de minimis standard in determining severity at Step Two. *See id.* at 862. An impairment or combination of impairments is not severe "...if it does not significantly

-6-

limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); 20 C.F.R. 416.921(a). The types of "basic work activities" that qualify for use in the regulations are described in 20 C.F.R. § 404.1521(b); 20 C.F.R. 416.921(b). An impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it

could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience." *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir.1985). The non-severity step of the sequential evaluation process is simply an administrative convenience for screening out totally groundless claims. *Id.*

Since Plaintiff bears the burden of proof at Step Two, the first question is whether Plaintiff presented sufficient information to carry that burden. Here, Plaintiff has submitted sufficient medical evidence to make the required de minimis showing of severity. Plaintiff presented a record from the Lutheran Medical Center from August 26, 1996 where Plaintiff presented with complaints of shortness of breath. Tr. at 138. He reported that he had experienced shortness of breath for the past two to three years, but it had gotten worse over the past couple of weeks. *Id*. Plaintiff reported that the condition was severe enough to require him to resign from a few jobs. *Id*. He reported smoking more than a pack of cigarettes a day. *Id*. Ewald Kundtz, M.D. diagnosed Plaintiff with mild chronic obstructive pulmonary disease and bronchitis. *Id*. at 139. He prescribed erythromycin, Tessalon Pearls, and a Proventil inhaler. *Id*. The Court finds that Plaintiff's statements to Dr. Kundtz, along with Dr. Kundtz's diagnosis and treatment plan are sufficient to make a de minimis showing of severity.

In *Duncan v. Shalala*, No. CV-91-550-S, 1993 WL 318854 at *3 (10th Cir. Aug. 19, 1993), unreported, an ALJ presumed from blood gas studies that a claimant's COPD condition was not severe and he dismissed the case at Step Two. The Tenth Circuit Court of Appeals reversed the ALJ's decision and remanded the case, stating that "a finding of nondisability at step two should be made only with great care." *Id*. Here, the ALJ did not even go so far as to presume Plaintiff's blood gas studies established non-severity. Rather, the ALJ performed a cursory two-paragraph review of the evidence related to COPD. Tr. at 14. He considered the fact that Plaintiff continued

to smoke without referring to any medical opinion as to what effect, if any, smoking would have on Plaintiff's condition. *See id*. Further, as Plaintiff contends, the ALJ looked only to part of Dr. Krause's opinion and ignored his diagnosis of crackling rales with early clubbing. *See id*. at 14, 388.

In *Hyatt Corporation v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991), the Sixth Circuit held that an administrative agency must adequately explain the factual and legal basis for its decision in order to permit meaningful judicial review. More specifically, in *Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th 1998), the court noted that the APA requires an ALJ to identify the reasons and basis for his conclusions and held that strict adherence to that requirement is critical to the appellate review process. Here, the ALJ did not comply with those requirements. His review of the medical evidence is simply inadequate to justify his conclusion that Plaintiff's COPD was not a severe impairment. The ALJ's decision fails to establish that Plaintiff's claim is totally groundless. *See Farris*, 773 F.2d at 89-90. Therefore, the case must be remanded for further factfinding, analysis, and articulation on the issue of Plaintiff's respiratory impairments.

Plaintiff also contends that the ALJ failed to address the effects of his obesity. ECF Dkt. #18 at 15. Again, Plaintiff has made a de minimis showing of severity through Dr. Kundtz's August 26, 1996 treatment note stating that Plaintiff was obese. Tr. at 138. An ALJ must consider the effects of obesity at all steps in the evaluation process. SSR 02-1P (2002) at 3. Social Security Ruling 02-1P states, "[a]s with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id*. at 4. Defendant contends that the ALJ was no required to discuss obesity in this case because Plaintiff presented no evidence of a functional limitation. ECF Dkt. #20 at 12. Defendant relies upon *Essary v. Comm'r of Soc. Sec.*, No. 03-6233, 2004 WL 2452596 at *5 (6th Cir. Oct. 28, 2004), unreported, and *Cranfield v. Comm'r of Soc. Sec.*, No. 02-5685, 2003 WL 22506409 at **5 (6th Cir. Nov. 3, 2003). These cases are easily distinguishable because neither dealt with dismissal at Step Two and because the ALJ in both of those cases at least acknowledged the claimant's obesity. Here, the ALJ should have considered the effects of obesity on Plaintiff's respiratory impairments because "obesity may increase the severity of coexisting or related impairments to the

-8-

extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1P (2002) at 5. Therefore, when reconsidering this case on remand, the ALJ must consider Plaintiff's obesity in accord with Social Security Ruling 02-1P.

### ii. Mental Impairments

Plaintiff also contends that the ALJ erred in dismissing his claim of mental impairments at Step Two. ECF Dkt. #18 at 15-19.

Here again, Plaintiff has made a de minimis showing of severity predating the date last insured. Although the ALJ stated that "[a]t the time the claimant was last insured for benefits, he was being treated for alcohol dependence, not PTSD," that observation is incorrect. Tr. at 17. Plaintiff presented a treatment record documenting treatment for PTSD from 1992 until 1998. *Id.* at 506. Plaintiff had taken doxepin[3] and sertraline[4] to treat the condition. *Id.* Further, on June 26, 1997 (three months before Plaintiff's date last insured) a registered nurse indicated an existing PTSD diagnosis. *Id.* at 343. Lastly, Plaintiff testified at the administrative hearing that he received inpatient treatment for PTSD in 1989, but the ALJ would not allow him to testify further on the issue because it would have been redundant of a medical record in the case file. *Id.* at 687. The record to which the ALJ referred was a letter from the VA certifying that Plaintiff was admitted to the residential component of the Homeless Chronic Mentally Ill Program on August 31, 1989. *Id.* at 132. Although the letter did not specifically state that Plaintiff received treatment for PTSD, the letter is certainly consistent with Plaintiff's testimony at the administrative hearing, thus providing an indication that Plaintiff had a history of treatment for PTSD. Therefore, Plaintiff should have had an opportunity to elaborate on the details of his inpatient care. Despite being deprived an

---

[3] Doxepin is used to treat depression and anxiety. U.S. National Library of Medicine, Medline Plus *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682390.html.

[4] Sertraline is a drug used primarily for depression that may be effective for the treatment of certain anxiety disorders such as post-traumatic stress disorder. 3 Attorneys Medical Deskbook § 40:3 (4th).

opportunity to further explain his treatment, Plaintiff still managed to make a de minimis showing of severity based upon the other evidence he presented.

In finding that Plaintiff did not suffer from a severe impairment, the ALJ relied upon opinions of state agency psychologists, Dr. Tishler and Dr. Coyle, for the proposition that "there was insufficient evidence of the claimant's impairment for the period ending September 30, 1997." Tr. at 17. Those psychologists, however, stated that Plaintiff had a determinable impairment, PTSD, during that period. *Id*. at 349. Further, the psychologists did not check the box indicating that there was insufficient evidence to substantiate the presence of an anxiety disorder for the insured period. *See id*. at 344 (defining the assessment period), 349(setting forth a diagnosis of PTSD for the insured period). Dr. Tishler and Dr. Coyle based their opinion on a retrospective review of Plaintiff's medical records. *Id*. at 344.

Plaintiff also presented retrospective opinions from Dr. Castro, who treated Plaintiff from February 2001 through June 2003. Tr. at 374-76. Dr. Castro opined that Plaintiff had experienced symptoms of PTSD since his return from Vietnam in 1966. *Id*. at 376. Further, the ALJ considered a retrospective opinion from Dr. Krause, who conducted a clinical interview and psychiatric testing prior to concluding that Plaintiff had a history of PTSD. *Id*. at 387-88. Further, Plaintiff presented an opinion from Dr. Clower, who examined Plaintiff a little more than a year after his date last insured and diagnosed PTSD. *Id*. at 578-79.

The ALJ discounted Dr. Castro's and Dr. Clower's opinions because they did not examine Plaintiff until after Plaintiff's date last insured. Tr. at 17. The ALJ then gave more weight to Dr. Tishler's and Dr. Coyle's opinions because "[t]heir assessment was in keeping with the requirements of the Social Security regulations." *Id*. The ALJ's explanation does not illuminate the reasons for his decision. In light of the ALJ's insufficient explanation, the Court fails to see how he could afford more weight to the retrospective opinions of Dr. Tishler and Dr. Coyle who never examined Plaintiff than he afforded to psychologists who conducted clinical interviews and testing. The ALJ did not properly consider Dr. Castro's retrospective opinion, which is binding unless it is contradicted by other evidence or by "overwhelmingly compelling" non-medical evidence. *See Shaw v. Apfel*, 221 F.3d 126, 133 (2d Cir. 2000); *Brown v. Apfel*, 991 F.Supp. 166, 171 (W.D.N.Y

1998). Without further articulation on the issue, the Court does not find that the ALJ's decision is supported by substantial evidence. *See Hyatt Corporation*, 939 F.2d at 367; *Morehead Marine Services*, 135 F.3d at 375 (1998).

Furthermore, the ALJ determined that Dr. Clower's opinion was entitled to little weight because it was based on an interview and history, which the ALJ stated was not a sign, symptom, or laboratory finding showing a psychological abnormality. Again, the ALJ's conclusion is not well-founded. As Plaintiff notes, the diagnostic criteria for PTSD require the claimant to have suffered a traumatic event in the past. ECF Dkt. #18 at 17. The *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) ("DSM-IV-TR") sets forth the diagnostic criteria for PTSD, with its pertinent part duplicated here:

> **Diagnostic Criteria for Posttraumatic Stress Disorder**
>
> A. **The person has been exposed to a traumatic event** in which both of the following were present:
>
>   1. The person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others.
>
>   2. The person's response involved intense fear, helplessness, or horror. Note: In children, this may be expressed instead by disorganized or agitated behavior.

*DSM-IV-TR*. at 467 (emphasis added). Therefore, a person's history of a traumatic event is a sign or symptom of PTSD. The ALJ's rationale for rejecting Dr. Clower's opinion is misplaced and requires reconsideration on remand.

The ALJ favored the opinions of the state agency psychologists over other psychologists without sufficient explanation. He ignored a documented diagnosis of PTSD prior to the date last insured, and he refused to allow Plaintiff to explain the treatment he received as an impatient in the Homeless Chronic Mentally Ill Program in 1989. He ignored testimony and documentation that Plaintiff had taken doxepin and sertraline for the entire insured period. Lastly, the ALJ afforded little weight to evidence of Plaintiff's impairment following the insured period. In *Richardson v. Heckler*, 750 F.2d 506, 509-510 (6th Cir. 1984), the Sixth Circuit held that a condition proven to exist in the past is presumed to continue absent evidence of a change. As a result, evidence that a

-11-

claimant was disabled five years prior to his date last insured and again five years after his date last insured supported a finding that the claimant had been continuously disabled. *Id.* Furthermore, the Sixth Circuit has held that, where a claimant suffers from a chronic impairment, medical evidence subsequent to the claimant's date last insured may be probative of his condition prior to the expiration of his insured status. *Ellis v. Schweicker*, 739 F.2d 245, 247 (6th Cir. 1984). In this case, despite indications that Plaintiff suffered from PTSD and received treatment prior to, during, and after the insured period, the ALJ found no severe impairment. Consequently, the Court finds that substantial evidence does not support the ALJ's findings and the case must be remanded for further factfinding, analysis, and articulation.

### B. Plaintiff's other allegations are moot

Plaintiff also alleges that the ALJ failed to properly apply the treating physician rule and to call an independent medical expert at the administrative hearing. ECF Dkt. #18 at 19-23. Since the matter is being remanded for further factfinding, analysis, and articulation with regard to Plaintiff's physical and mental impairments, it is not necessary to address Plaintiff's remaining arguments at this time. The Court, however, reminds the ALJ that retrospective opinions by treating physicians are still binding unless they are contradicted by other evidence or by "overwhelmingly compelling" non-medical evidence. *Shaw v. Apfel*, 221 F.3d 126, 133 (2d Cir. 2000); *Brown v. Apfel*, 991 F.Supp. 166, 171 (W.D.N.Y 1998). The Court further notes that the ALJ should call on the services of a medical advisor when the onset date of a disability must be inferred. SSR 83-20 at 3.

## VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for further factfinding, analysis, and articulation consistent with this opinion.

IT IS SO ORDERED.

Date: June 10, 2008   */s/ George J. Limbert*

GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE